UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARLENE MAINE,

                         Plaintiff,

v.                                                6:15-CV-1093
                                                (GTS)

CAROLYN W. COLVIN
Acting Commissioner of Social Security,

                         Defendant.
_____

APPEARANCES:                     OF COUNSEL:

OLINSKY LAW GROUP         HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.     EMILY M. FISHMAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Carlene Maine,

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 10, 11.)  For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is

denied.

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff has a tenth grade education with special education classes, and has past work as a cleaner, a housekeeper, a packer, and a temporary worker. Generally, Plaintiff's alleged disability consists of hydrocephalus,[1] learning impairment, and migraine headaches.

## B. Procedural History

On January 31, 2011, Plaintiff applied for Supplemental Security Income, alleging disability beginning July 31, 2008. (T. 25.)[2] Plaintiff's application was initially denied on May 2, 2011, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On January 9, 2012, Plaintiff appeared in a video hearing before the ALJ, Patrick Kilgannon. (T. 37-61.) On March 29, 2012, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 25.) On April 29, 2013, the Appeals Council vacated the ALJ's decision and remanded the matter for further proceedings. (*Id.*) In its remand order, the Appeals Council directed the ALJ to: (1) adhere to proffer procedures in accordance with HALLEX I-2-7-30, (2) update the evidence regarding Plaintiff's medical conditions, (3) further evaluate Plaintiff's mental impairments in accordance with the special technique, (4) give

---

[1] The primary characteristic of hydrocephalus is excessive accumulation of cerebrospinal fluid in the brain, resulting in an abnormal widening of the spaces in the brain called ventricles. MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/hydrocephalus/basics/definition/con-20030706 (last visited Jan. 26, 2017). The excess fluid increases the size of the ventricles and puts pressure on the brain that can damage brain tissues and cause "a large spectrum of impairments in brain function." *Id.* Common signs and symptoms of hydrocephalus in young and middle-aged adults (less than age 60) include headaches, difficulty remaining awake, loss of bladder control, impaired vision, and decline in memory, concentration, and other thinking skills. MAYO CLINIC, http://www.mayo clinic.org/diseases-conditions/hydrocephalus/basics/symptoms/con-20030706 (last visited Jan. 26, 2017).

[2] Page citations refer to the page numbers used on CM/ECF rather than the page numbers contained in the parties' respective motion papers.

further consideration to Plaintiff's maximum residual functional capacity ("RFC"), if necessary, and (5) obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base.  (T. 25, 113-14.)

On September 17, 2013, Plaintiff appeared in a second video hearing before ALJ Robert Gale.  (T. 25, 62-83.)  On March 6, 2014, the ALJ issued a second written decision finding Plaintiff not disabled under the Social Security Act.  (T. 17-36.)  On July 10, 2015, the Appeals Council denied Plaintiff's request for review.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.  The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 27-35.)  First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 31, 2011, the application date.  (T. 27.)  Second, the ALJ found that Plaintiff's hydrocephalus and learning disability are severe impairments, but that Plaintiff's migraine headaches, otitis media, breast legions/cysts, thyromegaly, hyperlipidemia, obesity, tobacco use, sinusitis, and folliculitis are not severe impairments.  (T. 28.)  Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings").  (T. 28-30.) The ALJ considered Listings 12.02 and 12.05.  (*Id.*)

Fourth, the ALJ found that Plaintiff has the RFC

> to perform medium work as defined in 20 CFR 416.967(c), because the claimant is able to lift and/or carry fifty pounds occasionally and twenty pounds frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday.  The claimant is unlimited in her ability to use her extremities to push and pull, and the claimant is able to occasionally climb, balance, stoop, kneel, crouch, and crawl.  The claimant has no

> visual, communicative, or environmental limitations. Mentally, the
> claimant is able to perform simple job tasks, interact appropriately
> with co-workers and supervisors, and adapt to changes in a routine
> work setting.

(T. 30-33.) Fifth, the ALJ found that Plaintiff has no past relevant work. (T. 33.) Sixth, and

finally, the ALJ found that there are jobs existing in significant numbers in the national economy

that Plaintiff can perform. (T. 34.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts five arguments in support of her motion for judgment on the

pleadings. First, Plaintiff argues that the ALJ failed to comply with the Appeals Council's

remand order to update the record evidence regarding Plaintiff's medical conditions. (Dkt. No.

10, at 3, 11-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in failing to

find Plaintiff's migraines severe at step two of the sequential evaluation. (*Id.* at 3, 12-14.)

Third, Plaintiff argues that the ALJ's RFC determination is not supported by substantial

evidence. (*Id.* at 3, 14-18.) Within this argument, Plaintiff argues that the ALJ erred in

weighing the medical opinion evidence and failed to develop the record regarding Plaintiff's

impairments. (*Id.*) Fourth, Plaintiff argues that the ALJ's credibility determination is

unsupported by substantial evidence. (*Id.* at 3, 18-20.) Fifth, and finally, Plaintiff argues that the

ALJ's step five determination is not supported by substantial evidence. (*Id.* at 3, 20-21.)

Generally, Defendant makes five arguments in support of her motion for judgment on the

pleadings. First, Defendant argues that substantial evidence supports the ALJ's step two finding.

(Dkt. No. 11, at 7-11 [Def.'s Mem. of Law].) Second, Defendant argues that substantial

evidence supports the ALJ's RFC determination and assessment of the opinion evidence. (*Id.* at

11-17.) Third, Defendant argues that the ALJ was not required to develop the record further.

(*Id.* at 17-21.)  Fourth, Defendant argues that substantial evidence supports the ALJ's credibility finding.  (*Id.* at 21-23.)  Fifth, and finally, Defendant argues that substantial evidence supports the ALJ's step five determination.  (*Id.* at 24-25.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.      Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth

> inquiry is whether, despite the claimant's severe impairment, he has
> the residual functional capacity to perform his past work.  Finally, if
> the claimant is unable to perform his past work, the [Commissioner]
> then determines whether there is other work which the claimant could
> perform.  Under the cases previously discussed, the claimant bears
> the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated

below.

### A.    Whether the ALJ's Step Two Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 10, at 14-18 [Pl.'s Mem. of

Law].)  To those reasons, the Court adds the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of

impairments is not severe if it does not significantly limit a [claimant's] physical or mental

ability to do basic work activities."  20 C.F.R. § 416.921(a).  The regulations define "basic work

activities" as the "abilities and aptitudes necessary to do most jobs," with examples including the

following: (1) physical functions such as walking, standing, lifting, pushing, pulling, carrying or

handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and

remembering simple instructions; (4) using judgment; (5) responding appropriately to

supervision, co-workers and usual work situations; and (6) dealing with changes in a routine

work setting.  20 C.F.R. § 416.921(b).  Accordingly, the severity of an impairment is determined

by the limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis v. Comm'r,* 11-CV-1205, 2012 WL 5464632, at *4 (N.D.N.Y. Sept. 7, 2012) (citing *Coleman v. Shalala,* 895 F. Supp 50, 53 [S.D.N.Y. 1995]); *see also McConnell v. Astrue,* 03-CV-0521, 2008 WL 833968 (N.D.N.Y. Mar. 27, 2008).

"The second step requirement under the prescribed disability analysis is truly *de minimis*, and intended only to screen out the truly weakest of cases." *Davis v. Colvin*, 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 [2d Cir. 1995]). When an ALJ finds that one or more of a plaintiff's impairments are severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the five-step analysis and did not deny the claim based on lack of a severe impairment alone. *Ellis,* 2012 WL 5464632, at *5; *Tyron v. Astrue*, 10-CV-0537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012); *Kemp v. Comm'r*, 10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011).

When "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010); *see also* 20 C.F.R. § 416.923 (stating that the ALJ is required to consider the "combined effect of all of [a plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

Here, the ALJ found that Plaintiff's migraine headaches were not a severe impairment under the regulations. (T. 28.) The ALJ reasoned that there was not enough documentation to show that Plaintiff's migraine headaches rise to the level of a severe impairment. (*Id.*) Rather, the ALJ noted that, in July 2011, treating neurosurgeon Satish Krishnamurphy, M.D., stated that

Plaintiff's headaches were almost gone after her brain surgery in February 2011.[3] (*Id.*) Additionally, the ALJ stated that no treating source has indicated that Plaintiff's migraines impose limits on Plaintiff's ability to engage in basic work activities. (*Id.*)

Plaintiff argues that the ALJ's analysis ignores the proper severity standard, which does not require an opinion from a *treating source* to establish that a plaintiff's impairment is severe. (Dkt. No. 10, at 13-14 [Pl.'s Mem. of Law].) Plaintiff's point is well taken. Moreover, in April 2013, more than two years after Plaintiff's brain surgery, treating physician Lev Goldiner, M.D., noted that Plaintiff reported that she was continuing to experience headaches with nausea, vomiting, photophobia, and decreased vision. (T. 517.)

For the reasons discussed below in Point III.B.ii. of this Decision and Order, this matter is being remanded for the ALJ to develop the record and reevaluate the physical RFC determination. Upon remand, the ALJ should also reevaluate the severity of Plaintiff's migraines based on a fully developed record.

**B.    Whether the ALJ's RFC Determination is Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10, at 14-18 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

---

[3]    On February 28, 2011, Plaintiff had an endoscopic third ventriculostomy for her hydrocephalus. (T. 464-65.)

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 [July 2, 1996]). "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6; *accord* SSR 85-15, 1985 WL 56857 (Jan. 1, 1985).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin,* 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. § 416.945(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources, such as therapists and social workers, to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. § 416.913(a), (c)-(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir. 1984).

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 416.927(c)(2); *Halloran v. Barnhart,* 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue,* 484 F. App'x 632, 633-34

(2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record. 20 C.F.R. § 416.927(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

For the ease of analysis, the Court will address the ALJ's mental and physical RFC determinations separately below.

### i.      The ALJ's  Mental RFC Determination

The Court finds that the ALJ's mental RFC is supported by substantial evidence, including the mental opinions of (1) consultative psychological examiner Jeanne Shapiro, Ph.D., and (2) State Agency Medical Consultant C. Butensky, Psychologist. (T. 404-07, 412-29.)

### a.      Consultative Psychological Examiner Dr. Shapiro

Upon examination on April 21, 2011, Dr. Shapiro observed that Plaintiff's attention and concentration, and recent and remote memory skills were intact. (T. 406.) Dr. Shapiro estimated that Plaintiff's intellectual functioning was in the deficient range, but observed that her insight and judgment were good. (*Id.*) Dr. Shapiro concluded that the results of her examination suggested that Plaintiff had no significant psychiatric problems. (T. 407.) Dr. Shapiro indicated that Plaintiff's prognosis appeared to be good "given that she does not present with significant

psychiatric symptoms." (*Id.*) Dr. Shapiro indicated that Plaintiff "may" need assistance managing money due to her cognitive deficits, but also noted that Plaintiff reported that she is able to manage money. (T. 406-07.) Finally, Dr. Shapiro assessed Plaintiff with no disorders under Axis I, and a "rule-out" diagnosis of mild mental retardation under Axis II. (T. 407.)

In sum, Dr. Shapiro opined that Plaintiff appeared capable of understanding and following simple instructions and directions; maintaining attention and concentration for tasks; performing simple and some complex tasks with supervision and independently; and learning new tasks. (T. 406.) Dr. Shapiro further opined that Plaintiff appeared capable of regularly attending to a routine and maintaining a schedule; making appropriate decisions; dealing with stress; and relating to and interacting with others "moderately well." (T. 406-07.)

### b. State Agency Medical Consultant Dr. Butensky

On May 2, 2011, Dr. Butensky reviewed Plaintiff's medical records, and completed a psychiatric review technique and mental RFC assessment. (T. 412-29.) Dr. Butensky noted that Plaintiff participated in special education during high school and was classified as learning disabled. (T. 424.) Dr. Butensky reviewed and summarized Plaintiff's IQ scores, which ranged from 72 to 102, with full-scale IQ scores ranging from 77 to 90. (T. 413.) Additionally, Dr. Butensky noted that Plaintiff regularly completed all activities of daily living independently, including cooking, doing general cleaning, doing laundry, shopping, driving and managing money. (T. 413, 424.)

In sum, Dr. Butensky opined that despite Plaintiff's "mild to moderate" intellectual impairment, she retained the capacity to perform simple job tasks, sustain attention and concentration for simple job tasks, and interact appropriately with coworkers and supervisors. (T. 424.) Dr. Butensky further opined that Plaintiff had "mild to moderate" limitation in her ability to adapt to changes in a routine work setting. (T. 424, 426-27.)

In assessing Plaintiff's mental RFC, the ALJ afforded "significant weight" to the opinions of Dr. Shapiro and Dr. Butensky due to their programmatic expertise and the relative consistency of their opinions with the longitudinal medical evidence in the record. (T. 33.) Plaintiff essentially argues that the ALJ's mental RFC analysis did not appear to consider all of Dr. Shapiro's examination findings or adopt every potential limitation identified in her opinion. However, the Court finds that the ALJ's mental RFC determination was supported by substantial evidence for the following reasons.

First, an ALJ's "failure to cite specific evidence does not indicate that such evidence was not considered." *Camille v. Colvin*, , 15-CV-2087, 2016 WL 3391243, at *2 n.3 (2d Cir. 2016) (citing *Brault v. SSA, Comm'r,* 683 F,3d 443, 448 [2d Cir. 2012]). Moreover, in formulating a plaintiff's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony." *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

Second, the ALJ properly applied the regulations in evaluating Dr. Shaprio and Dr. Butensky's opinions. (T. 32-33.) As discussed above, the ALJ considered Dr. Shapiro and Dr.

Butenski's professional credentials and programmatic expertise, Dr. Shapiro's examination of Plaintiff, Dr. Butenski's review of the medical evidence, and the consistency of their opinions with the other medical evidence in the record pursuant to 20 C.F.R. § 416.927(c).  (*Id.*)  Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to discuss each and every factor of the regulation.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where a plaintiff challenged the ALJ's failure to discuss each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Third, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  20 C.F.R. §§ 416.912(b)(1)(vi), 416.913(c), 416.927(e); *see also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

Finally, the Court turns to Plaintiff's argument that the ALJ's mental RFC was not supported by substantial evidence because the ALJ failed to obtain an updated IQ test.  The ALJ noted that the record contains Plaintiff's IQ scores ranging from 72 to 102 (from 1989, 1995, and

1997).[4]  (T. 30, 413.)  The ALJ further noted that, while Plaintiff has a remote history of special

education and related services, there is no evidence that her learning disability precludes her

ability to engage in unskilled work.  (T. 31-32.)  Additionally, the ALJ noted that the record

contained no evidence of specialized psychiatric treatment or outpatient counseling, and no

mental opinion indicating that Plaintiff cannot engage in unskilled work.  (T. 31.)  Rather, the

opinions of Dr.  Shaprio and Dr. Butensky discussed above indicated that Plaintiff could perform

simple work despite any assessed intellectual impairment.  Notably, Dr. Butensky also reviewed

Plaintiff's IQ scores, and assessed Plaintiff with "mild to moderate" intellectual impairment.  (T.

413, 424.)

Accordingly, based on the evidence of record, the ALJ was not required to order an

additional IQ test.  *See Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014) (finding that the ALJ

was not required to order an IQ test to fully assess the plaintiff's cognitive abilities because where

there are no obvious gaps in the administrative record regarding Plaintiff's mental abilities, "the

ALJ is under no obligation to seek additional information"); *Crawford v. Astrue*,13-CV-6085,

2014 WL 4829544, at *24 (W.D.N.Y. Sept. 29, 2014) (finding that, where the record did not

suggest that the plaintiff suffered from "significant cognitive impairments," the few references to

the plaintiff's mental retardation in the record were insufficient to trigger the ALJ's duty to order

an intelligence examination).

For the reasons set forth above, the Court finds that the ALJ's mental RFC determination

is supported by substantial evidence.  However, as this matter is being remanded for the ALJ to

develop the record more fully regarding Plaintiff's physical capabilities, this should not be read to

---

[4]        In the Second Circuit, it is reasonable to presume, in the absence of evidence indicating otherwise,
that a claimant will have a fairly constant IQ throughout his or her lifetime.  *Talavera v. Astrue*, 697 F.3d 145, 152
(2d Cir. 2012); *Jackson v. Colvin,* 14-CV-0756, 2015 WL 5005740, at *3 (N.D.N.Y. Aug. 20, 2015); *Lyons v.
Colvin,* 13-CV-0614, 2014 WL 4826789, at * 11 (N.D.NY. Sept. 29. 2014).

preclude the ALJ from reevaluating Plaintiff's mental RFC in light of any new evidence obtained upon remand.

### ii.      The ALJ's Physical  RFC Determination

Next the Court turns to the ALJ's physical RFC determination.  The record contains the following  opinion of Plaintiff's physical work-related abilities and limitations from consultative physical examiner Kalyani Ganesh, M.D.

### a.      Consultative Physical Examiner Dr. Ganesh

On April 21, 2011, Dr. Ganesh opined that Plaintiff had no gross physical limitation noted in sitting, standing, walking, or the use of the upper extremities.  (T. 410.)  Dr. Ganesh opined that Plaintiff "should avoid heavy lifting, carrying, pushing, and pulling."  (*Id.*)  In assessing Plaintiff's physical RFC, the ALJ afforded "significant weight" to the opinion of Dr. Ganesh due to her programmatic expertise and the relative consistency of her opinion with the longitudinal medical evidence in the record.  (T. 33.)  However, the ALJ noted that Dr. Ganesh's opinion that Plaintiff should avoid heavy lifting, carrying, pushing, and pulling was rendered shortly after Plaintiff underwent surgery, and Plaintiff demonstrated significant improvement after her surgery. (*Id.*)  However, as Plaintiff noted, Dr. Ganesh did not indicate that her opinion was temporary or otherwise impacted by Plaintiff's recent surgery.

Moreover the ALJ failed to cite, and the record does not contain, a medical opinion to establish that Plaintiff could perform all of the exertional demands of the ALJ's RFC determination (including lifting/carrying 50 pounds occasionally and 25 pounds frequently, and sitting, standing, and walking for six hours during an eight-hour workday).  (T. 30-33.) Accordingly, it appears that the ALJ improperly substituted his own lay opinion for competent medical opinion evidence.  It is well settled that anALJ is not permitted to substitute his own

expertise or view of the medical proof for any competent medical opinion. *Greek*, 802 F.3d at 375; *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (stating that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion"); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

Further, even if the ALJ properly assessed Dr. Ganesh's opinion, the ALJ's RFC determination that Plaintiff could perform a range of medium work is not supported by substantial evidence based on the current record. *See id.*, at 81-82 (finding that the ALJ's RFC determination was not supported by substantial evidence in the absence of a medical opinion indicating that the plaintiff could perform the work activities in the RFC determination); *House v. Astrue*, 11-CV-0915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (holding that remand was necessary where there was no medical opinion supporting the ALJ's RFC determination); *Larkin v. Colvin,* 13-CV-0567*,* 2014 WL 4146262, at *9 (N.D.N.Y. Aug. 19, 2014) (holding that remand was required where the record lacked a broad assessment of Plaintiff's physical functional limitations from an acceptable medical source).

As discussed above, the ALJ determined that Plaintiff had the RFC to perform a range of medium work without a medical opinion indicating that Plaintiff could perform all of the exertional requirements of medium work, including lifting up to 50 pounds occasionally (up to one-third of an eight-hour workday), and lifting and carrying up to 25 pounds frequently (up to two-thirds of an eight-hour workday), and sitting, standing, and walking for six hours in an eight-hour workday. (T. 30-33); 20 C.F.R. § 416.967(c); SSR 83-10, 1983 WL 31251, *6 (1983). The Court recognizes that, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *See House*, 2013 WL 422058, at *4. However, that is not the case in the

present matter because the ALJ determined that Plaintiff's hydrocephalus is a severe impairment. (T. 28.)

Finally, the Court notes that an ALJ has an affirmative duty to develop a claimant's complete medical history. 20 C.F.R. § 416.912(d); *Lamay v. Comm'r of Soc. Sec*., 562 F.3d 503, 508-09 (2d Cir. 2009). By statute, an ALJ is required to develop a claimant's complete medical history for at least twelve months before an application for benefits was filed, and for a longer period when there is reason to believe that additional information is necessary to reach a decision. *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998). This duty exists even when a claimant is represented by counsel, due to the non-adversarial nature of a benefits proceeding. *DeChirico,* 134 F.3d at 1184; *Lamay*, 562 F.3d at 509.

Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. 20 C.F.R. § 416.920b(c)(1). Reviewing courts hold that an ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision. *Rosa*, 168 F.3d at 79 n.5. However, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.920b(c)(1)-(4); *Rosa*, 168 F.3d 72, 80; *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). Here, the ALJ did not recontact Dr. Ganesh to resolve any ambiguities in her opinions, or to obtain a function by function opinion of Plaintiff's work-related physical abilities and limitations. Nor did the ALJ obtain an updated medial opinion of Plaintiff's physical limitations despite acknowledging the Appeals Council's remand order instructions to update the evidence regarding

Plaintiff's medical conditions and further consider Plaintiff's maximum RFC.[5]  (T. 25.)

For these reasons, remand is necessary for the ALJ to obtain at least one complete opinion of Plaintiff's physical work-related abilities and limitations.  This may include (1) contacting Plaintiff's treating medical sources, and/or (2) ordering an updated physical consultative examination to obtain a complete function by function opinion of Plaintiff's work-related physical abilities and limitations.[6]  Remand is also required for the ALJ to reevaluate Plaintiff's physical RFC based on a fully developed record.  Because the Court has concluded that remand is required for the ALJ to (1) develop the record, (2) reassess the severity of Plaintiff's migraine headaches, and (3) reevaluate Plaintiff's physical RFC, the Court need not reach Plaintiff's remaining arguments concerning subsequent steps of the sequential analysis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

---

[5]    The regulations provide that, upon remand, an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."  20 C.F.R. § 416.1477(b).  Accordingly, reviewing courts have found that failure to comply with the Appeals Council's remand order may be grounds for remand.  *See Mortise v. Astrue,* 08-CV-0990, 713 F. Supp. 2d 111, 120-24 (N.D.N.Y. 2010) (remanding for calculation of benefits based on the ALJ's failure to comply with the Appeals Council's remand order); *Gorman v. Astrue,* 08-CV-0251, 2009 WL 4884469, at *10 (N.D.N.Y. Dec. 10, 2009) (remanding based on the ALJ's failure to comply with the Appeals Council's remand order); *Scott v. Barnhart,* 592 F. Supp 2d 360, 371-72 (W.D.N.Y. 2009) ("The ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand.")

[6]    *See* 20 C.F.R. § 416.920b(c)(1) (providing that an ALJ may recontact a medical source for clarification or to obtain additional information); 20 C.F.R. § 416.920b(c)(3) (providing that an ALJ may order a consultative examination to resolve an inconsistency or insufficiency in the record evidence).

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. §

405(g), for further proceedings consistent with this Decision and Order.

Dated: February 7, 2017
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge